[Civ. No. 38238. Second Dist., Div. Three. Nov. 24, 1971.]

DOOLEY'S HARDWARE MART, Plaintiff and Appellant, v.
FOOD GIANT MARKETS, INC., et al., Defendants and Respondents.

COUNSEL

Baird, Baird & Wulfsberg and Woodrow W. Baird for Plaintiff and Appellant.

Tyre & Kamins, Richard J. Kamins and Peter M. Appleton for Defendants and Respondents.

Miller, Groezinger, Pettit & Evers and Alan E. Harris as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**COBEY, Acting P. J.**—Dooley's Hardware Mart appeals from a judgment, following trial to the court, denying it under the Unfair Practices Act (Bus. & Prof. Code, §§ 17000-17101)[1] a permanent injunction and related relief against Food Giant Markets, Inc. (and its store managers in Long Beach and Compton) offering for sale and selling in limited quantities and for limited periods in January 1967 three loss leaders, Tide, a detergent, Folger's Coffee and C & H Sugar. Loss leaders are a species of below cost selling.

Dooley's contends that this denial of injunctive relief was prejudicially erroneous because no intent to injure competitors or destroy competition is required for violation of section 17044 and in any event there was under section 17043 sufficient evidence of this intent by reason of the failure of defendants to rebut the statutory presumption of its existence.[2] We disagree and affirm.

---

[1] The sections cited and discussed in this opinion are found in the Business and Professions Code unless otherwise indicated.

[2] Section 17043 reads: "It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition."

Section 17044 reads: "It is unlawful for any person engaged in business within this State to sell or use any article or product as a 'loss leader' as defined in Section 17030 of this chapter."

Section 17030 reads: " 'Loss leader' means any article or product sold at less than cost:

"(a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or

"(b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or

"(c) Where the effect is to divert trade from or otherwise injure competitors."

■ The first issue presented is whether an intent to injure competitors or to destroy competition is required for violation of section 17044. Dooley's asserts the intent is not required because there is no mention of it in either section 17044 or section 17030, the two sections directly and immediately applicable. Food Giant replies that the Fourth District of this court almost 20 years ago held expressly to the contrary in *Ellis* v. *Dallas,* 113 Cal.App.2d 234, 238-239 [248 P.2d 63], hearing denied. Dooley's response is that the year after the *Ellis* decision, the Legislature changed the wording of section 17044 to make clear that wrongful intent was not required.[3]

We have examined the 1953 rewrite of the section and cannot find any basis for attributing the change in meaning urged by Dooley's. Furthermore we have also examined the legislative history of the 1953 bill (S.B. 881) and found that it was enacted in exactly the same form as it was introduced. Finally, both sections 17071 and 17071.5,[4] creating rebuttable presumptions of the requisite wrongful intent, apply expressly, without excepting section 17044, to *all* actions brought under the Act. The latter of these sections was enacted in 1961, some nine years after the *Ellis* decision. (Stats. 1961, ch. 1347, § 1, p. 3125.) It seems clear to us that the *Ellis* decision is still the governing law on this point in view of the failure of the Legislature

A violation of section 17044 was clearly shown, if wrongful intent is not required, since Food Giant's merchandising vice-president testified that Food Giant used the three loss leaders to induce the purchase of other of its merchandise by customers lured to Food Giant's store by the loss leaders. Neither of the other alternative grounds in section 17030, however, were established. In fact Dooley's made no attempt to show any actual diversion of trade from Dooley's to Food Giant.

[3]Prior to the 1953 rewrite section 17044 read "The practice of using any article or product as a 'loss leader' is included among the prohibitions of this chapter [the Act]." (Stats. 1941, ch. 526, § 1, p. 1842.)

[4]Section 17071 reads: "In all actions brought under this chapter proof of one or more acts of selling or giving away any article or product below cost or at discriminatory prices, together with proof of the injurious effect of such acts, is presumptive evidence of the purpose or intent to injure competitors or destroy competition."

Section 17071.5 reads: "In all actions brought under this chapter proof of limitation of the quantity of any article or product sold or offered for sale to any one customer to a quantity less than the entire supply thereof owned or possessed by the seller or which he is otherwise authorized to sell at the place of such sale or offering for sale, together with proof that the price at which the article or product is so sold or offered for sale is in fact below its invoice or replacement cost, whichever is lower, raises a presumption of the purpose or intent to injure competitors or destroy competition. This section applies only to sales by persons conducting a retail business the principal part of which involves the resale to consumers of commodities purchased or acquired for that purpose, as distinguished from persons principally engaged in the sale to consumers of commodities of their own production or manufacture."

This presumption has been held constitutional by another division of this court earlier in this same case. (*Dooley's Hardware Mart* v. *Food Giant Markets, Inc.,* 1 Cal.App.3d 105, 107-108 [81 Cal.Rptr. 451].)

to nullify by appropriate amendment the *Ellis* interpretation of section 17044 (see *Bishop* v. *City of San Jose,* 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137]) and that therefore, notwithstanding the absence of any language to this effect in either section 17044 or section 17030, intent to injure competitors or to destroy competition is required for violation of section 17044. In other words for competition to be unfair under the Act, the person engaging in the challenged practice must possess an intent to injure his competitors or destroy his competition. (See § 17001.)

■ The second issue presented is whether there is substantial evidence that defendants rebutted the presumption, created by both section 17071 and section 17071.5 and arising at least in part out of their conduct, that their intent in offering for sale and selling the three loss leaders was either to injure competitors or to destroy competition. Initially we note that the presumption of section 17071 does not apply in this case. ■ To create this presumption proof must be had, among other things, of one or more sales of an article or product below cost together with proof of the injurious effect of the practice. ■ The trial court found that the three loss leaders were offered for sale and sold by Food Giant below cost in January 1967. But it also found that there was insufficient evidence to find that this conduct diverted trade from or otherwise injured Food Giant's competitors generally or Dooley's in particular.[5] The sufficiency of the evidence supporting this last finding apparently is not challenged.

■ On the other hand the trial court's findings support the existence in this case of the presumption created by section 17071.5. The parties disagree, however, as to the effect of this presumption. Dooley's asserts that under the Evidence Code it is a Morgan presumption affecting the burden of proof. Food Giant contends that it is only a Thayer presumption affecting the burden of producing evidence. We have examined the relevant sections in the Evidence Code, sections 601 through 606, and the comments of the Law Revision Commission and a legislative committee published as annotations to these sections and agree with Dooley's that under section 605[6] the presumption of section 17071.5 is a presumption affecting

---

[5]The trial court also found that there was insufficient evidence to find that Food Giant's use of the loss leaders had an adverse economic effect on Dooley's or any effect on the prices charged by Food Giant's competitors for these products or other products sold by them. Furthermore the trial court also found that, with reference to the items sold by Food Giant which were competitive to those sold by Dooley's, it did not have sufficient evidence to find that the two concerns were in the same trading area.

[6]In relevant part Evidence Code section 605 reads: "A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied. . . ."

the burden of proof—that is, that under it the defendants in this case were required to prove that by their use of the three loss leaders they did not intend to injure competitors or destroy competition.[7]

■ This brings us to the question as to how may defendants rebut the 17071.5 presumption. Our view of how this may be done is akin to that of our Supreme Court in *People* v. *Pay Less Drug Store*, 25 Cal.2d 108, 114 [153 P.2d 9], in regard to the 17071 presumption. We believe that defendants may rebut the 17071.5 presumption either by evidence tending to bring them within one of the exceptions to the prohibitions contained in the Act[8] or by evidence establishing otherwise that they did not have the requisite wrongful intent.

■ The trial court found that in using these three loss leaders in January 1967 Food Giant's purpose was to meet the competition of its supermarket competitors who advertised the same or substantially similar supermarket items below cost in limited quantity before, during and after the Food Giant advertisements.[9]

According to the uncontradicted testimony of Food Giant's merchandising vice president the use of loss leaders in staples in a large part of the retail grocery business in the greater Los Angeles metropolitan area has been a way of life for many years. Food Giant chose to use this sales promotion device in January 1967 because it then discontinued another such device—"Post Time at the Races" due to public resistance to and criticism of such games. Retail grocery selling in this area is a volume, low margin business in which about 1 percent of the gross sales receipts is usually devoted to promotion. Competition is largely on a volume rather than on a price basis. The maintenance and possible expansion of sales volume is the hallmark of success and Food Giant used the challenged loss leaders in lieu of its game in a futile attempt to maintain its preexisting sales volume.

---

[7]Evidence Code section 606 reads: "The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact."

[8]The only applicable exception under the facts of this case is section 17050, subdivision (d). This subdivision reads: "(d) In an endeavor made in good faith to meet the legal prices of a competitor selling the same article or product, in the same locality or trade area and in the ordinary channels of trade."

The limitation on the quantity of a loss leader a customer might purchase was imposed by Food Giant to prevent substantial increase in the cost to it of the use of these loss leaders. The quantity ceiling prevented a customer from buying much of the item at one time and also prevented competitors from sending shoppers into Food Giant's stores to harass Food Giant by doing the same thing.

[9]The trial court's further finding that Dooley's did not sustain its burden of proof that defendants intended to injure competitors or destroy competition is erroneous. In this case this burden of proof rested on defendants by reason of the application of the section 17071.5 presumption.

Our examination of the record discloses that the findings of the trial court that Food Giant resorted to the use of three loss leaders in January 1967 in order to meet competition and to maintain and hopefully to expand its sales volume are supported by substantial evidence. This being so, its implied finding that defendants rebutted the 17071.5 presumption of wrongful intent is likewise supported by substantial evidence.

The judgment is affirmed.

Schweitzer, J., and Allport, J., concurred.