Sandor FRANKEL and John Doe, a/k/a "Webster Mews", Plaintiffs,

v.

STEIN AND DAY, INCORPORATED, Defendant.

No. 79 Civ. 520.

United States District Court,
S. D. New York.

May 8, 1979.

Sandor Frankel, New York City, pro se.

Monasch, Chazen & Stream, New York City, for defendant; Arnold C. Stream, New York City, of counsel.

LASKER, District Judge.

This suit results from a falling out between Sandor Frankel and Webster Mews (a pseudonym), authors of *The Aleph Solution,* and their publisher, Stein and Day, Inc. The authors seek damages and injunctive and declaratory relief against Stein

and Day as a result of the latter's alleged infringement of their copyright and violation of a publishing agreement. Stein and Day counterclaims that the authors have breached the agreement and seeks damages. Both parties have moved for summary judgment.

On June 1, 1978, the authors entered into a written agreement with Stein and Day setting forth the terms under which *The Aleph Solution* was to be published. The agreement required the publisher: (1) to apply for a copyright to be held in the authors' names (¶ 2), (2) to take out a total of three advertisements publicizing the book (¶ 19), and (3) to pay the authors two-thirds of any signature payment for the paperback rights to the book (¶ 4). A rider to this last clause specified that:

> "Time of payment of royalties and of rendering of accountings by publisher to Author is of the essence of this agreement. If any such payment is not timely made or if any such accounting is not timely rendered and if any such default shall continue for a period of 30 days following written notification by Agent to Publisher of such default, *then at the option of Author all rights granted to Publisher under this agreement shall automatically revert to Author.*" (emphasis added)

The authors, in turn, were required to deliver two copies of their manuscript "complete and satisfactory to the Publisher" on or before June 20, 1978, time being deemed "of the essence." (¶ 8) The contract also contained the following provision:

> "This agreement constitutes the whole agreement between the parties and may not be modified, altered, waived, amended, or changed except by an instrument in writing signed by both parties. This agreement shall be interpreted according to the laws of the State of New York." (¶ 19)

The complaint alleges that on or about September 18, 1978, Stein and Day entered into an agreement granting Jove Publications the paperback rights to *The Aleph Solution* and received in return a signature payment of $27,500. Although the authors have made written demand for the part of the payment to which they are entitled under their agreement with the publisher, they have not been paid. Accordingly, Frankel and Mews assert that all rights granted Stein and Day under the agreement have, pursuant to the terms of the rider to clause 4, reverted automatically to them but that the publisher is nevertheless continuing to sell, distribute and collect monies with respect to *The Aleph Solution* and "to otherwise infringe upon the copyright." Moreover, they allege that Stein and Day has breached an oral agreement to spend a minimum of $30,000. on advertisements for the book. The complaint seeks a mandatory injunction barring Stein and Day from holding itself out as having any interest in the book or "from otherwise infringing" the authors' copyright; a declaratory judgment that all rights in the book have reverted to the authors; and damages for infringement, for breach of the signature payment agreement, for breach of the oral advertising agreement, and for negligent promotion of the book.

Stein and Day does not dispute the facts set out above; however, it contends that they represent only half the story. The essential provision in the agreement, the publisher asserts, was that a satisfactory manuscript be submitted by June 20th to ensure that the book would be in the stores in time for the important Christmas market. Sol Stein, President of Stein and Day, states that the June 20th deadline was made a "mockery" by Frankel and Mews and that a manuscript was not submitted until August, destroying the publication schedule and substantially impairing Stein and Day's ability to recoup its investment. (Affirmation of Sol Stein, February 8, 1979, ¶ 10) Defendant also submits affirmations of other employees which assert, most forcefully, that the authors' unreasonable behavior further delayed publication. (Affirmations of Wallace Exman and Marilee Talman) According to Stein, the publisher has lost more than $25,000. on *The Aleph Solution* and the paperback agreement

merely salvaged some of the loss. (Affirmation, ¶ 12) Accordingly, Stein and Day counterclaims for damages resulting from the authors' alleged breach and argues that it would be inequitable, in light of plaintiffs' conduct, to require it to turn over a substantial amount of the signature payment.

### Stein and Day's Motion

Stein and Day moves for summary judgment dismissing the complaint under Rules 12, 19 and 56, Fed.R.Civ.P., on the grounds that (1) the court lacks subject matter jurisdiction over the lawsuit; (2) Jove, an allegedly indispensable party to the action, has not been joined; and (3) the plaintiffs' contractual claims are barred by the parol evidence rule and failure to allege a material breach of the publishing agreement.

The complaint specifies that this action arises under the federal copyright laws and that the court therefore has jurisdiction under 28 U.S.C. § 1338.[1] However, Stein and Day argues that the lawsuit is in reality an action to enforce a contract since, in its view, the infringement claim is dependent on an interpretation of the publishing agreement to determine whether there has been a forfeiture or reversion of the licensed rights. It argues that when a plaintiff must secure a judicial determination of its rights before it is entitled to relief under the copyright laws, no federal jurisdiction exists in the absence of diversity between the parties. See *T. B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir. 1964); *Muse v. Mellin,* 212 F.Supp. 315 (S.D.N.Y.1962); see also

*Luckett v. Delpark,* 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); *Coditron Corp. v. AFA Protective Systems, Inc.,* 392 F.Supp. 158 (S.D.N.Y.1975).

However, Stein and Day is incorrect in characterizing the plaintiffs' infringement claim as being dependent on an interpretation of the publishing agreement. As the authors point out, under clause 2 of the agreement, the copyright has always been in the authors' name. Moreover, under the rider to clause 4, all rights in the book licensed to the publisher reverted automatically to the authors following Stein and Day's failure to advance the signature payment. Accordingly, this is not a case, such as those relied on by defendant, in which a "preliminary question arises unrelated to the copyright laws," *Muse v. Mellin, supra,* 212 F.Supp. at 316, or in which plaintiff "has sued to set the license aside, seeking recovery for unauthorized use only incidentally or not at all," *T. B. Harms Co. v. Eliscu, supra,* 339 F.2d at 825. Instead here the authors are entitled to seek immediate relief for infringement and, indeed, their complaint sets out as the very first form of relief requested an injunction to enjoin such infringement. Under these circumstances, copyright jurisdiction exists. *Cohan v. Richmond,* 86 F.2d 680 (1936) (per L. Hand, J.); *Muse v. Mellin, supra,* 212 F.Supp. 315; see also, *Mailer v. RKO Teleradio Pictures, Inc.,* 332 F.2d 747 (2d Cir. 1964); *Twentieth Century-Fox Film Corp. v. National Publishers, Inc.,* 294 F.Supp. 10 (S.D.N.Y.1968); 3 *Nimmer on Copyright* § 10.15, at 10–110 (1978).[2]

1. 28 U.S.C. § 1338(a) provides that:
    "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

2. A further question arises as to the court's jurisdiction over this action under the copyright statute. Section 101 of the Copyright Act, 17 U.S.C. § 411, specifies that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with

this title." Paragraph 2 of the publishing agreement placed on Stein and Day the obligation to secure a copyright. The publisher now asserts for the first time in its cross-motion for summary judgment that the copyright was never registered and that jurisdiction is therefore defective under the statute.

Frankel states in his reply affidavit that, upon learning of this defect, he immediately complied with the registration requirements of the Act and asks that the court permit amendment of the complaint to allege that such registration has taken place. Affidavit of Sandor Frankel, March 23, 1979, ¶ 4; Reply Memorandum, p. 2. If such an amendment is made, we see no reason why the action may not proceed unin-

■ Stein and Day also asserts that plaintiffs are not entitled to "rescission" of the publishing agreement because the publisher's failure to pay two-thirds of the signature payment from Jove was not a material breach of the agreement. It relies on *Nolan v. Sam Fox Publishing Co., Inc.*, 499 F.2d 1394 (2d Cir. 1974), in which the court held that a music company's failure to pay a composer 74% of the royalties due under an agreement was not a material breach and therefore did not justify rescission. Stein and Day argues that where, as here, the authors have been paid a $10,000. advance (said by defendant to be 35% of the total monies owed them), the book has been published and distributed, and paperback rights secured, the breach cannot be considered so substantial as to justify reversion to the authors of all rights under the agreement.

There are several significant factual differences between this case and *Nolan* which suggest that, if the standard set out in that case were applied here, the breach would in fact be found material. *Nolan* held that rescission is permitted when a breach is " 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.' " 499 F.2d at 1397. Whereas in *Nolan,* the court found that Fox's failure to pay royalties was the result of " '[o]versight, negligence and less than meticulous bookkeeping . . . ' ", *id.* at 1399, it is undisputed here that defendant's failure to pay the money in question was willful. Moreover, the contract in this case specifies that all rights revert automatically to the authors in the event the publisher fails to pay them their share of the signature payment. This unambiguous language is strong, if not conclusive, evidence that the parties considered that such a breach would be material and thus, that to deny rescission on this ground, would " 'tend to defeat the object of the parties in making the contract.' " Indeed, since the plain language of the contract specifies that reversion "shall automatically" result upon the publisher's failure to perform the obligation in question here, we believe that the contract must be complied with literally and that notions of materiality are irrelevant. See Calamari and Perillo, *Contracts* §§ 149–150, pp. 236–37 (1970). Accordingly, while there is appeal to Stein and Day's argument that it has performed to the best of its ability given the time constraints allegedly created by plaintiffs, nevertheless we find that Stein and Day is liable for this breach of the publishing agreement.

■ Stein and Day also moves to dismiss the authors' claim for damages for breach of the alleged oral advertising agreement on the ground that evidence as to it is barred by the parol evidence rule. We agree that this claim must be dismissed. At a conference in chambers, one of the authors, an experienced attorney who helped prepare the publishing agreement, stated that the oral agreement was made prior to signing the written agreement between the parties. However, the written agreement, which deals specifically with the topic of advertising, makes no mention of a $30,000. budget. Moreover, the contract provides that it "constitutes the whole agreement between the parties and may not be modified, altered, waived, amended, or changed except by an instrument in writing signed by both parties". In the face of such clear evidence that the contract was intended to incorporate the entire understanding between the parties, evidence of a prior oral agreement, which would substantially increase the publisher's financial obligation, is barred. *Fogelson v. Rackfay Construction Co.*, 300 N.Y. 334, 90 N.E.2d 881 (1950); *Jiffy Sew Corp. v. Paar*, 29 A.D.2d 643, 286

---

terrupted. There is precedent for maintaining a copyright action even when registration is made after the filing of the complaint, see *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970); *Charron v. Meaux*, 60 F.R.D. 619, 624 (S.D.N.Y.1973); *Rosedale v. News Syndicate Co.*, 39 F.Supp. 357, 358 (S.D. N.Y.1941), but see *New York Times Co. v. Sun Printing & Publishing Ass'n*, 204 F. 586 (2d Cir. 1913) *cert. denied*, 234 U.S. 758, 34 S.Ct. 676, 58 L.Ed. 1579 (1914); *Rudolph Lesch Fine Arts, Inc. v. Metal*, 51 F.Supp. 69, 70 (S.D.N.Y.1943), and here, where Stein and Day does not object, we believe that this procedure is appropriate and equitable. Plaintiffs are therefore given leave to amend their complaint.

N.Y.S.2d 865 (1st Dept. 1968).[3] Two written trade releases, referring to a $30,000. budget, which were circulated by Stein and Day do not compel a contrary conclusion. The authors provide no authority for the proposition that such releases to third persons are contractually binding as between the parties here and such an interpretation appears to be precluded by the language in the agreement requiring all modifications to be signed by both parties.

■ The sixth cause of action alleges that Stein and Day was grossly negligent "in failing to attempt to develop, exploit, publicize, or promote *The Aleph Solution*" in accordance with customary professional standards. Stein and Day moves to dismiss this claim, arguing that it is "clearly hyperbolical and has no demonstrable basis in the face of defendant's completed performance." Whether or not Stein and Day was grossly negligent is a question of fact which cannot be decided on the papers before us. The motion to dismiss this claim is therefore denied pending a hearing on the underlying factual matters which it raises.

■ Finally, Stein and Day's motion to dismiss the action in the absence of an indispensable party, Jove Publications, is denied. In a letter to the court dated February 13, 1979, counsel to Jove states that:

"Jove takes no position in this matter, does not wish to intervene or appear in this matter, and has no objections to the court's deciding plaintiffs' motion for a preliminary injunction as well as any other matters, without Jove's participation." (Letter of Richard Udell, February 13, 1979)

In light of these assurances, we see no need to require Jove's presence in this action, nor any prejudice to the defendant which could arise from Jove's absence.

*Plaintiffs' Motion for Summary Judgment*

Plaintiffs move for summary judgment under Rule 56, Fed.R.Civ.P., on all but the negligence claim. Since the damage claim for violation of the oral advertising agree-ment has been dismissed above, there remain for decision claims for a mandatory injunction barring infringement of the authors' copyright, damages for infringement and breach of the paperback provision of the publishing agreement, and for a declaratory judgment that all rights under the publishing agreement have reverted to the authors. As to the last claim, plaintiffs request that the court order:

"that all documents . . . relating to *The Aleph Solution* be delivered forthwith to the plaintiffs; that all copies of *The Aleph Solution* in the possession, custody or control of the defendant be delivered forthwith to the plaintiffs, or proof of their destruction be submitted to the Court; that the defendant be compelled to remove from all outlets and channels of sale and distribution all unsold copies of *The Aleph Solution* and deliver same to the plaintiffs, or proof of their destruction be submitted to the Court; and that the defendant be compelled to deliver to the plaintiffs all printing plates for *The Aleph Solution* within the defendant's possession, custody or control, or proof of their destruction be submitted to the Court."

■ The authors have established that Stein and Day is liable on account of its failure to comply with the paperback signature payment provision and, pursuant to that provision, all rights in the agreement have reverted to the authors. Therefore, Frankel and Mews are entitled to a declaratory judgment that the rights have reverted, and we hereby declare that all rights licensed to Stein and Day under the publishing agreement of June 1, 1978, have reverted to the authors. The authors are also entitled to damages for infringement and for breach of the paperback payment provision.

■ However, as stated above, Stein and Day has counterclaimed that the authors breached the publishing agreement by failing to submit a timely manuscript, with the result that the marketability of the book was impaired and the publisher was sub-

**3.** The publishing agreement specifies that New York law is to govern its interpretation (¶ 19).

stantially damaged. This counterclaim goes to the heart of the authors' entitlement to injunctive relief since it suggests that Frankel and Mews destroyed the publisher's ability to recoup its investment in the book. Therefore, before the court exercises its equitable power on behalf of the authors, it is entitled to determine whether they themselves have lived up to their end of the bargain with Stein and Day. Similarly, the decision whether to award the affirmative remedies sought pursuant to the declaratory judgment—which are so sweeping as to partake of an equitable nature—should be deferred pending determination of the authors' conduct in regard to the contract.

Accordingly, the motion for summary judgment is granted as to the damages claims in the second and fourth causes of action and as to the claim for a declaratory judgment. A hearing, to be combined with trial pursuant to the provisions of Rule 65(a), Fed.R.Civ.P., will be held promptly to resolve outstanding factual questions affecting the remainder of the relief sought by plaintiffs as well as the merits of Stein and Day's counterclaim.[4]

### Plaintiffs' Motion for a Preliminary Injunction

Frankel and Mews also move for a preliminary injunction enjoining Stein and Day and its agents from "holding themselves out as having any interest whatsoever in the book *The Aleph Solution*." Under the familiar standard of this circuit, a preliminary injunction may be granted "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief," *Sonesta*

*Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original).

The same unresolved factual questions which compel denial of plaintiffs' motion for summary judgment render it impossible to determine the likelihood of their succeeding on the merits. Moreover, while the authors have raised "serious questions going to the merits", they have not satisfied their "basic obligation . . . to make a clear showing of the threat of irreparable harm." *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir. 1976). Moreover granting an injunction now will effectively grant the authors the bulk of the relief requested in the complaint while destroying the publisher's ability to salvage its investment. *Schneider, Hill & Spangler, Inc. v. Cudmore,* 325 F.Supp. 173, 176–77 (D.Conn. 1971). Under these circumstances, the motion for a preliminary injunction should be denied.

In sum, Stein and Day's motion is granted as to the claim for breach of the oral advertising agreement and is otherwise denied. Plaintiffs' motion for summary judgment is granted as to the second, third and fourth causes of action and is otherwise denied. The motion for a preliminary injunction is denied. An early trial date will be set to resolve the outstanding factual questions necessary to disposition of the remainder of the parties' claims.

It is so ordered.

---

4. A factual question also exists as to the proper measure of damages for infringement of the authors' copyright. The complaint seeks "the greater of all profits of the defendant derived from said infringements of the copyright or the statutory damages" provided in the federal Copyright Act. The court has no information concerning what profits, if any, Stein and Day has received as a result of its continuing distri-

bution of the book. Moreover, the court is entitled *to set statutory damages at anywhere from $250. to $50,000., as it "considers just".* 17 U.S.C. § 504(c). The question of what measure of damages is just as between these two parties necessarily depends in part on whether or not each has complied with its contractual obligations.