**CO–OPPORTUNITIES, INC., Plaintiff,**

v.

**NATIONAL BROADCASTING COMPANY, INC., Defendant.**

**No. C–79–2321–MHP.**

United States District Court, N. D. California.

Feb. 17, 1981.

Boone & Knudsen, Halley, Cornell & Lynch, San Francisco, Cal., for plaintiff.

Morrison & Foerster, San Francisco, Cal., for defendant.

## OPINION

PATEL, District Judge.

·This action is before the court on defendant NBC's motion for summary judgment. Plaintiff is alleging copyright infringement, federal and state antitrust violations and unfair trade practices.

Plaintiff Co-opportunities, Inc., incorporated in June 1977, is engaged in the business of providing information to radio and television advertising staff regarding currently available cooperative advertising programs. One of plaintiff's services is a loose-leaf publication with monthly supplements entitled *Co-opportunities.* Prior to incorporation, plaintiff's predecessor Broadcast Marketing Co. [BMC] provided the co-operative advertising service. From 1974–1976 Ms. Jan Wohlers worked for BMC and was primarily responsible for producing the co-op service.

In early 1976, NBC entered into an agreement with BMC which provided among other things that NBC could offer the co-op services to its radio affiliates at a twenty percent discount. NBC wished to provide this service to its affiliates as a means of promoting itself in the intensely competitive national network industry.[1]

In August 1976, Ms. Wohlers left the employ of BMC and entered into an arrangement with NBC whereby Ms. Wohlers would provide defendant with a co-op advertising service as an independent contractor. NBC then began providing such a service free of charge to its radio affiliates. It is this *Dataline* service to which plaintiff's claim of copyright infringement is directed.

In June 1977, Co-opportunities, Inc. was incorporated to carry on the work of BMC. During this period of time, William McGee, the sole proprietor of BMC transferred his various copyrights, including those to *Co-opportunities,* and "all assets" of BMC to plaintiff in exchange for stock in the new corporation. The copyright transfer was registered in December 1978 and a Notice of Assignment of Copyrights was recorded in July 1979 shortly before and in contemplation of bringing this action.

### 1. *ANTITRUST CLAIMS*

*Federal Claim*

Plaintiff's first claim is for violation of federal antitrust law. Defendant amply

demonstrates and plaintiff does not attempt to refute that the practice of NBC in distributing copies of its *Dataline* service free to affiliates is not an illegal tying arrangement. Plaintiff argues however that NBC violates the Sherman Act, 15 U.S.C., when it uses its economic power in the radio network programming market for co-opportunity publications. Plaintiff does not expressly set forth in its opposition to motion for summary judgment whether it is arguing a § 1 violation, a § 2 violation or both, but appears to be arguing a combined restraint of trade/attempted monopolization theory.

■ Assuming without deciding that network programming and co-opportunity services represent two distinct markets, plaintiff still cannot prevail under its theory. To defeat summary judgment, plaintiff must show that defendant has a dominant position in the market for network programming and that it has exploited that position for the purpose of obtaining unfair advantage in the co-opportunity service market. *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *ALW, Inc. v. United Air Lines, Inc.,* 510 F.2d 52 (9th Cir. 1975). Although plaintiff cites several broadcast cases that recognize the existence of certain property rights to media dissemination, i. e., early reporting of news and exclusive right to broadcast sporting events, the court is not convinced that such protection from appropriation by others creates the same presumption of economic power as does a product protected by copyright. *See Levitch v. Columbia Broadcasting System, Inc.,* 495 F.Supp. 649, 662–68 (S.D.N.Y.1980).

Even assuming sufficient economic power, plaintiff has not made a showing that NBC is engaging in predatory pricing as a means to unfair advantage in co-op services, or that it has the specific intent to monopolize that market. *Janich Bros., Inc. v. American Distilling Co.,* 570 F.2d 848 (9th

---

1. Affiliates receive compensation from the national network in exchange for broadcasting NBC's programming. The national network makes its profit by selling commercial time to national advertisers. (Def's Summary Judgment Memorandum, at 5.)

Cir. 1977). While defendant NBC has submitted evidence that it distributes *Dataline* free of charge and solely for the purpose of increasing its share of the affiliate market, plaintiff has made no showing that NBC intended to expand its dissemination of its co-op publication to nonaffiliate radio networks.[2] Further, NBC has made a sufficient factual showing that its affiliates remain free to purchase co-op services elsewhere if they choose and that a number of affiliates still purchase co-op services from plaintiff.

Plaintiff suggests that its business has declined because of the free *Dataline* service but submits no evidence to support this claim. However even if some injury was demonstrated, restraint of trade is not determined solely by a showing of injury to any one competitor; the Sherman Act is intended to encourage unfettered competition rather than protect any one business from the rigors of a competitive market. *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 450 (9th Cir. 1979); *Robert's Waikiki U–Drive v. Budget Rent–A–Car,* 491 F.Supp. 1199, 1212–14 (D.Hawaii 1980). Additionally, defendant has made a showing that plaintiff's business actually increased during the relevant time period. Plaintiff has neither refuted this showing nor addressed the fact that Ms. Wohlers increased competition by going into business for herself.

Based on the foregoing factors and authority, defendant's summary judgment motion with respect to the federal antitrust claim is hereby granted.

*State Claim*

■ Plaintiffs have also alleged a violation of state antitrust law under the Cartwright Act (Cal.Bus. & Prof.Code §§ 16700–16758). It is well-settled that federal cases interpreting the Sherman Act apply as well to Cartwright Act claims. *General Communications Engineering, Inc. v. Motorola Communications & Electronics, Inc.,* 421

F.Supp. 274, 294 (N.D.Cal.1976). Accordingly, summary judgment is granted defendant on the Cartwright Act claim.

### 2. COPYRIGHT INFRINGEMENT

Defendant argues that plaintiff lacks standing to sue for copyright infringement and that it has failed to meet procedural requirements for filing an infringement action. The essential facts are not in dispute and the court finds as a matter of law that plaintiff Co-opportunities has the necessary standing to bring this action.

*Accrued Causes of Action*

■ The parties are in agreement that the usual assignment of a copyright does not include an assignment of existing causes of action for infringement. *See De Silva Construction Corp. v. Herrald,* 213 F.Supp. 184 (M.D.Fla.1962). The court is not persuaded that *National Council of Young Israel, Inc. v. FEIT Co., Inc.,* 347 F.Supp. 1293 (S.D.N.Y.1972) represents an exception to this general rule applicable to the present case. Although Mr. McGee arguably assigned his copyrights and "all" the assets of BMC to plaintiff, there is no specific assignment of accrued causes of action. Although the court in *National Council* determined that a sale of assets included accrued causes of action for copyright infringement, it expressly based its finding on the existence of a comprehensive and unrestricted conveyance. Plaintiff Co-opportunities has introduced no evidence of any such comprehensive transaction and the court is not persuaded that such an assignment occurred. Plaintiff's argument of a continuing cause of action is unavailing as no specific facts are introduced by way of affidavit or declaration to support the allegation of continuing infringement.

Although plaintiff did not acquire the right to sue on prior acts of infringement at the time it was assigned the copyright, it has now acquired such right pursuant to the express assignment of accrued causes of

---

**2.** Although not resting its decision on such distinction, the court has serious doubt that NBC is in the market for co-op services at all but rather is merely a purchaser of services from Ms. Wohlers, plaintiff's true competitor.

action filed in the Copyright Office on December 16, 1980 while this motion was under submission.[3] The question is whether such an assignment may be allowed to 'relate back' to the time of filing the present suit. As noted above, because there are no facts to support a continuing violation, the three-year statutory period had run at the time of the effective assignment of accrued causes of action.

If the subsequent assignment is allowed to relate back to the filing of the suit, the result is to toll the statute of limitations and leave the plaintiff with a claim that is not time barred.

The court is mindful that the statute of limitations should not be used mechanically to prevent adjudication on the merits between the real parties in interest who had sufficient notice of the proceedings. It can be argued that giving plaintiff retroactive standing to bring suit defeats the purpose for requiring an express assignment of an accrued cause of action. However what little related authority there is on the issue suggests the opposite result.

In a patent infringement action, plaintiff was allowed to amend her complaint to sue as executrix of the deceased patent holder's estate after the statute of limitations had run and after she had initially brought suit in her individual capacity without having title to the patent in question. *Owen v. Paramount Pix*, 41 F.Supp. 557 (S.D.Cal. 1941). In an analogous situation, the court stated "[i]t is well settled that, even after the expiration of the statutory period, an assignee may be admitted to an action commenced by his assignor after the assignment but before the statute has run." *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1359 (D.C.Cir. 1971). Further, amendments made after the statute of limitations has run that change the capacity in which the plaintiff brings suit, are to be liberally construed. 3 Moore's Federal Practice ¶ 15.08[5] (2d ed. 1976).

Although the above authorities are not concerned with assignment of an accrued cause of action for copyright infringement, the principle is similar. Where there is no risk of double suit or double recovery and where defendant has not been prejudiced by a change in the status of plaintiff by amendment or otherwise, the statute of limitations should not be a bar to the resolution of an action on the merits between the real parties in interest. The problem of double recovery here has been eliminated by McGee's assignment of any cause of action to plaintiff Co-opportunities.[4]

When the relation back doctrine has the effect of avoiding the statute of limitations bar, additional concerns are whether the defendant was sufficiently put on notice, whether new claims are brought in and whether any injustice will result. *See generally* 3 Moore's Federal Practice ¶ 15.15[3] (2d ed. 1980).

Here defendants were put on notice of the copyright infringement claim at or before the filing of the complaint in this matter. The nature of the claim whether brought in the name of Co-opportunities or McGee is essentially the same. While plain-

---

3. The court has some concern whether information available to a party before a case is taken under submission, in this case the December filing of the copyright assignment, should be allowed into the record after the matter is submitted. However, defendant took the opportunity to reply to the filing and raised no objection.

4. Additionally, Mr. McGee states by way of declaration that he intended to assign the right to bring suit on accrued causes of action at the time he transferred BMC's assets to plaintiff. A number of such attempts were made during the course of this action and although abortive, do tend to show the alleged intent.

Defendant argues that McGee was well-versed in basic rules of copyright law and would have expressly assigned accrued causes of action had that been his true intent. Although there is some evidence of Mr. McGee's familiarity with copyright law, the court is willing to accept Mr. McGee's representations for the purpose of this motion. Furthermore, even if McGee did not intend such an assignment prior to suit, as discussed below defendant is not prejudiced by allowing the copyright infringement claim to go forward.

tiff may not have been properly diligent in securing the right to sue, its right to be heard on the merits should not be defeated by an overly technical application of the applicable statute. The court thus holds that Co-opportunities has acquired standing to bring the copyright infringement claim and that its acquisition relates back to the filing of the complaint in this action.

## Recordation Requirement

■ The next obstacle for plaintiff is the recordation requirement of 17 U.S.C. § 205(d). That subsection provides that

[no] person claiming by virtue of a transfer to be the owner of copyright or of any exclusive right under a copyright is entitled to institute an infringement action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before recordation.

Two months prior to the initial filing of the present action, plaintiff's assignor executed a "Notice of Assignment of Copyrights." Although not itself the "instrument of transfer under which such person claims", plaintiff argues that such notice is sufficient. Under § 204(a), the actual transfer of copyright ownership is valid if "an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed. . . ." While the wording of § 205(d) omits "or a note or memorandum of the transfer . . .", the court believes that the import of the statute is to provide record notice of a transfer prior to bringing suit. A record of a prior assignment gives such

notice. It is arguable that the legislature would have expressly included the phrase "note or memorandum of the transfer" if it meant to permit such a document to have legal effect, as it did in § 204. However defendant has produced no legal authority for that position[5] and the court believes that rigid concern for the meaning of such an omission would, under the facts of the present case, result in an unnecessary application of form over substance.

■ Even if the court determined that the Notice of Assignment did not meet the requirements of § 205(d), it would still be inclined to hold that the December 16 filing of Copyright Assignment sufficiently cured the § 205(d) defect. The question then becomes what effect recordation has on a previously instituted action.

A plain reading of § 205(d) indicates that recordation is a condition precedent to institution of suit. A similar interpretation has been given to the registration requirements of 17 U.S.C. § 411(a). Both the registration and recordation sections were enacted by the 1976 Copyright Act. Both require registration or recordation, as applicable, before *instituting* suit.[6]

The registration provisions of section 411 have been applied strictly so that failure to plead and prove registration is fatal to an action for infringement. *Strout Realty, Inc. v. Country 22 Real Estate Corp.*, 493 F.Supp. 997 (W.D.Mo.1980) and *Bromhall v. Rorvik*, 478 F.Supp. 361 (E.D.Pa.1979).

However, at least one other post-1976 court has looked favorably upon the curative effects of a late filing. *Frankel v. Stein & Day, Inc.*, 470 F.Supp. 209 (S.D.N.Y.1979). *See also Charron v. Meaux*, 60 F.R.D. 619 (S.D.N.Y.1973). In *Frankel*, the

---

**5.** One of the few written indications of the meaning of § 205(d) is found in 37 C.F.R. § 201.4(c) (1980). The Copyright Office is instructed to accept for recordation "[a]ny transfer of copyright ownership (including any instrument of conveyance, or note or memorandum of the transfer) . . . ." Such wording suggests that the phrase "instrument of transfer" is to be interpreted broadly.

**6.** Section 13 of the Copyright Act of 1909 as amended contained registration provisions sim-

ilar to section 411 of the 1976 Act. It provided in pertinent part: "No action or proceeding shall be *maintained* for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with." (Emphasis added). The 1909 Act also contained recordation of assignment provisions but none comparable to subsection 205(d) requiring recordation prior to institution of suit.

posture of the parties was somewhat similar to that here. A motion for summary judgment had been brought and among other grounds for challenging the court's jurisdiction was a claim that the plaintiff had failed to comply with the registration requirements. In reply to the motion, the plaintiff stated that upon learning of the defect he complied with the registration requirements and sought leave to amend his complaint to allege the compliance. Leave was given. In so doing, the court relied upon *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970). This pre-1976 case spurned a hypertechnical reading of 17 U.S.C. § 13 (§ 411's predecessor) and allowed supplemental pleadings where statutory provisions were complied with and related back. It should be noted that in neither *Strout* nor *Bromhall*, both post-1976 cases, is there any suggestion that the plaintiffs registered or made any attempt to register after the bringing of suit.

These cases persuade this court that a similar interpretation should attend subsection 205(d). Therefore the subsequent recordation will be allowed to relate back so that the assignee acquires a right to sue as of the date of filing the action.

### 3. UNFAIR TRADE PRACTICES

Plaintiff has conceded its false advertising claim against defendant and the remaining state claims involve alleged unfair trade practices under Cal.Bus. & Prof.Code §§ 17043 and 17044.

■ Section 17044 prohibits the sale or use of a "loss leader" as defined by § 17030.[7] By its express terms § 17030 requires a sale "at less than cost". It is undisputed that defendant NBC provides its *Dataline* service free of charge to its affili-ates. Plaintiff has cited no authority (and the court finds none) to suggest that § 17044 applies to situations like the present where no sale is involved. The court therefore finds that defendant is entitled to judgment on this count.[8]

Section 17043 provides that "[i]t is unlawful for any person engaged in business within the State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition." This section is generally interpreted as referring to horizontal competition. *See Plotkin v. Tanner's Vacuums*, 53 Cal.App.3d 454, 125 Cal.Rptr. 697 (1975).

Defendant argues that it is not a competitor of Co-opportunities but rather a purchaser of the co-op services from plaintiff's true competitor, Jan Wohlers. Although this may be true in a literal sense, such an interpretation is contrary to the spirit of the Unfair Trade Practices Act and the requirement of section 17002 to liberally construe the Act so as to serve its beneficial purposes. Although NBC is a purchaser of co-op services from Ms. Wohlers, as to its affiliates it is a provider and has represented *Dataline* as an NBC product.

Section 17043 prohibits the sale below cost or the giving away of a product for the purpose of injuring competition. It is undisputed that *Dataline* is provided to affiliates free of charge. Plaintiff argues however that § 17043 applies to products given away as well as to those sold below cost. Plaintiff cites only one authority in support of its unfair trade practices claim, *Paramount General Hospital Co. v. National Medical Enterprises, Inc.*, 42 Cal.App.3d 496, 117 Cal.Rptr. 42 (1974). Both the

---

**7.** Section 17030 provides:

"Loss leader" means any article or product sold at less than cost:

  (a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or

  (b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or

  (c) Where the effect is to divert trade from or otherwise injure competitors.

**8.** Even assuming § 17044 were to apply, plaintiff would need to demonstrate that defendant NBC had an intent to injure its competitors or destroy its competition. *Dooley's Hardware Mart v. Food Giant Markets, Inc.*, 21 Cal. App.3d 513, 98 Cal.Rptr. 543 (1971). As discussed below, plaintiff has failed to meet its burden on this issue.

wording of § 17043 and the holding in *Paramount* support plaintiff's position that a cause of action may be stated in some situations even though a product is given away rather than sold below cost. The facts in *Paramount* however, are significantly different from the facts presently before the court. In *Paramount,* defendant medical corporation was allegedly selling below cost or giving away medical services and office space to doctors planning to use defendant's adjacent hospital. Plaintiff, a corporation offering similar services several miles away, alleged that defendant was acting intentionally to injure the competition.

In the present situation, the product being given away is in the nature of a gift of an unrelated product rather than an integral part of the network affiliate agreement. This distinction is noted by one commentator on unfair competition.

> Despite the broad language of Bus. & P.C. § 17043 prohibiting giving "away any article or product, for the purpose of injuring competitors or destroying competition," the practice of giving away "gifts" of products along with purchases of dissimilar articles appears never to have been questioned in California, and it is likely that the statute would be construed as the cases from other jurisdictions indicate. The prohibition appears to be against giving away the primary article sole, and not against giving away the accompanying premium.

Carver, *Prices, Premiums, and Lotteries,* Legal Aspects Of Competitive Business Practices, § 8.137, at 337 (1961) (Calif. Continuing Education of the Bar).

■ The court is persuaded that the language in § 17043 about 'giving away' a product *refers to the giving away of a product that one normally sells.* There is no evidence that defendant normally sells co-op services and thus the court finds that plaintiff's § 17043 claim must fail.

■ Even assuming that § 17043 applied to defendant's practice of providing *Dataline* free of charge, plaintiff has not demonstrated defendant's intent to injure competitors or destroy competition. Section 17071 provides that a presumption of injurious intent may be had upon proof of below cost selling or giving away of a product and injurious effect. Even assuming that providing a free service in this context meets the first requirement, plaintiff has not raised a genuine issue as to whether it was in fact injured by defendant's practice.[9]

Although it appears from the record that some of plaintiff's customers did not renew their subscription during the period of time NBC was distributing *Dataline,* there is no evidence that the loss of business was a result of defendant's action. Further, plaintiff has not refuted the evidence that its business increased during this period of time, that NBC affiliates were free to purchase any co-op service they wished and that no one service provided complete co-op advertising information. Plaintiff has therefore not introduced evidence sufficient to raise the presumption of injurious intent.

■ Even had the presumption of injurious intent been shown, such a presumption is rebuttable. *Tri-Q, Inc. v. Sta-Hi Corp.,* 63 Cal.2d 199, 45 Cal.Rptr. 878, 404 P.2d 486 (1965). Defendant has introduced evidence that its purpose in providing the free *Dataline* service was to increase its standing with network affiliates. Plaintiff has introduced no contrary evidence and thus the court concludes that defendant had no intent to injure the competition for co-op services.

Plaintiff's sole remaining claim, a violation of the Lanham Act, has been withdrawn by plaintiff.

For the reasons stated above defendant's motion for summary judgment on claim one (federal antitrust violations), claim three (Lanham Act violations), claim four (state

---

**9.** Plaintiff submits a letter dated June 1977 from KNBC–TV cancelling its subscription with Co-opportunities. This evidence falls short of that required to defeat summary judgment on the issue of injury. Besides the fact

that KNBC is not a radio station, there is no indication of the reason for the cancellation and there is contrary evidence that this station was not receiving NBC's service for most of the relevant time period.

antitrust violations), claim five (state unfair trade practices) and claim six (state unfair and deceptive acts violations) is granted. Defendant's motion for summary judgment on the copyright infringement claim is denied.

Counsel for defendant shall submit an order in conformity with this decision.