**NORTHERN SONGS, LIMITED,**
Plaintiff,

v.

**DISTINGUISHED PRODUCTIONS, INC.,**
**Splotched Animal Music, Inc., Sesame**
**Street, Inc., Christopher Cerf and Nor-**
**mal Stiles, Defendants.**

**No. 83 Civ. 6352(RIC).**

United States District Court,
S.D. New York.

March 7, 1984.

Stuart, Zavin, Sinnreich & Wasserman, New York City, for plaintiff; Jonathan Zavin, Melinda Socol, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendants; Eugene L. Gir-

den, Robert P. LoBue, Cowan, Liebowitz & Latman, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The discord between the parties from which this suit arises is an alleged copyright infringement by defendants, Distinguished Productions, Inc., Splotched Animal Music, Inc., Sesame Street, Inc., Christopher Cerf and Norman Stiles. Plaintiff, Northern Songs, Ltd., ("Northern"), claims that defendants, all writers, publishers, producers and/or distributors, violated the copyrights it owns in two songs, "Hey Jude" and "Let It Be," by the composition, recording, manufacture, sale and performance of "Hey Food" and "Letter B," contained in the record album, "Born To Add". Northern's complaint contains three causes of action. "Hey Food" and "Letter B" are claimed first, to be copies of, and second, to be derivative works of the Lennon/McCartney creations, "Hey Jude" and "Let It Be". Third, plaintiff maintains that the food and letter variations violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because they mislead the public into believing that they are the actual Northern compositions or arrangements or derivations thereof.

Defendants seek dismissal of the complaint in this case, pursuant to F.R.Civ.P. 12(b)(6). The key note of defendants' motion is their contention that plaintiff has failed to comply with the recordation requirements of 17 U.S.C. § 205. In addition, defendants request an opportunity to conduct pre-answer discovery, directed at issues of ownership and transfer of the relevant copyrights. These requests are denied.

The facts relevant to this motion are somewhat complex due to certain errors made in transfers of the "Hey Jude"/"Let It Be" copyrights as among Northern, Maclen Music Corp., ("Maclen") and Comet Music Corp., ("Comet").[1] There is, however, no dispute among the parties that Northern was the original copyright claimant of "Hey Jude" and "Let It Be". "Hey Jude" was registered by Northern as an unpublished work effective September 3, 1968, and as a published work effective September 5, 1968. "Let It Be" was registered by Northern as a published work effective March 26, 1970. It is forward from this point that the chain of title becomes somewhat difficult to follow.

On January 1, 1973, Northern assigned these copyrights, among some 300 others, to Comet. The assignment was recorded in the Copyright Office on August 30, 1978. An assignment by Northern to Maclen of eleven compositions, none at issue here, was also made on January 1, 1973, and recorded on August 30, 1978. A later document revealed, however, that these assignments had been reversed. A memorandum dated June 11, 1979, and headed "to Whomever It May Concern," ("the memorandum"), recorded in the Copyright Office on June 20, 1979, reported that the schedules attached to the assignments which were recorded on August 30, 1978, from Northern to Comet and from Northern to Maclen had been inadvertently switched. As a result, it was noted, the copyrights for "Hey Jude" and "Let It Be" were intended to rest with Maclen, not Comet.

Two documents, both entitled "Withdrawal of Claim to Copyright", dated January 1, 1973, were also recorded on June 20, 1979. One was executed by both Northern and Comet, withdrawing Comet's claims to the Northern copyrights which had been assigned to it and recorded on August 30, 1978. Attached to the withdrawal, apparently as an exhibit, was the original assignment as recorded, but with the schedule of Comet compositions corrected to account for the error later described in the memorandum. The other, executed by Northern and Maclen, also withdrew Maclen's claim to the Northern compositions which had been assigned to it on August 30, 1978.

1. Northern is a United Kingdom corporation, and a wholly-owned subsidiary of ACC Corp., another United Kingdom corporation. Maclen and Comet are both United States corporations, and are both wholly-owned subsidiaries of ACC Corp. (Aff. of Jonathan Zavin ¶ 3).

Again, attached to this withdrawal, as an exhibit, was the original assignment as recorded, but with a corrected schedule of Maclen compositions, including "Hey Jude" and "Let It Be". These documents were, according to plaintiff, intended to return, *inter alia*, the "Hey Jude" and "Let It Be" copyrights to Northern.

Defendants' motion focuses upon the memorandum and its alleged inadequacies. Because, defendants maintain, the memorandum is the only document that can give meaning to the various assignments and withdrawals, it must meet all the recordation requirements pertaining to copyright transfer under § 205. In this regard, defendants argue: one, that the memorandum does not qualify as an instrument of transfer under § 205, and two, that even if it is a valid instrument of transfer, it does not meet the specific recordation requirements of § 205(c). Without disputing defendants' initial premise,[2] these arguments, while theoretically appealing, hold no force in the case at hand.

As defendants themselves emphasize, the import of § 205 "is to provide record notice of a transfer before the bringing of a suit." *Co-opportunities, Inc. v. National Broadcasting Co., Inc.*, 510 F.Supp. 43, 48 (N.D. Cal.1981). While defendants' alternative motion concerning pre-answer discovery raises issues concerning the validity of Northern's ownership of the subject copyrights, as well as to the effectiveness of the transfer documents, these questions are unrelated to the question of notice.[3] Defendants stop short of maintaining that they were unaware of the transfer or the memorandum. Certainly, there can be no doubt that plaintiff made a good faith, diligent effort to record properly "the transfer" between Maclen and Comet. Northern sought legal advice on how to correct the incorrect schedules attached to the original assignments. As a result, the memorandum was prepared and recorded with the Copyright Office along with all other documents relating to the subject copyrights.[4]

■■■ In faulting the memorandum for its failure to "clearly transfer the specific copyright by name of the work or registration number," and therefore, for the impediment to its discovery during a "reasonable search" of the Copyright Office Filings,[5] defendants are alleging that the memorandum did not provide constructive notice pursuant to § 205(c)(1).[6] As plain-

---

**2.** It is unclear what defendants mean by attaching such significance to the memorandum. The relevant issue, in the context of this infringement suit, it would seem, is whether the "Hey Jude" and "Let It Be" copyrights now rest with Northern or with some other party. 17 U.S.C. § 501(b). Defendants do not dispute the recordation of those documents by which both Maclen and Comet withdrew their claims to the assignments originally made to them; these appear to indicate the transfer of the subject copyrights back to Northern, even without the memorandum acting as a link. Defendants, in their Reply Brief, note only the Maclen withdrawal, which may account for the importance they attach to the memorandum. However, they cannot contend that § 205 requires recordation of an entire chain of title. As Professor Nimmer has pointed out, the statutory requirement, 17 U.S.C. § 205(d) is in the singular, from which it appears that the plaintiff need record only the immediate transfer to him. Melville Nimmer, 3 *Nimmer on Copyright* § 12.08 (1982). *See Swarovski America, Ltd. v. Silver Deer, Ltd.*, 537 F.Supp. 1201 (D.Col.1982). Nevertheless, since neither of the parties has fully addressed this

issue, the Court does not base its decision upon it.

**3.** Defendants maintain that the documents of title are confusing and "suspect as to dating, intended effect, and ultimately, validity." (Reply Brief at 10).

**4.** Counsel for Northern, Mayer, Nussbaum & Katz (now Mayer, Nussbaum, Katz & Baker) sought expert advice from Alan Latman, a member of the firm of Cowen, Leibowitz & Latman and professor of copyright law at New York University, to insure that the correction was handled properly. (Aff. of William R. Leibowitz ¶ 3–4).

**5.** The Copyright Office assignment records are indexed by name of the works affected by the transfer. Apparently, documents that do not enumerate the relevant copyrights are not retrieved during a search of the records. (Aff. of Brylawski ¶ 8).

**6.** The relevant provisions of § 205 read:
(c) *Recordation as Constructive Notice*
—Recordation of a document in the Copyright

tiff correctly notes, however, the requirements of § 205(c)(1) are intended to protect licensees, assignees and/or bona fide purchasers for consideration by providing to them the true identity of the copyright owner, to enable such persons seeking permission to use a copyrighted work to contact the proper party. *See Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841, 846–47 (N.D.Ill.1979); *Kenya Music, Inc. v. Warner Bros., Inc.*, 391 F.Supp. 1228, 1229 (S.D.N.Y.1975) (Stewart, J.). Where, as here, defendants had actual notice of the transfer and moreover, made no attempt to license rights in these songs from Comet, Maclen, Northern or anyone else, despite their knowledge of the copyrights' existence, their alleged failure to receive constructive notice under § 205(c)(1) cannot constitute a bar to the infringement suit before this Court.

 In any case, at least one court distinctly separated the requirements of § 205(c)(1) and § 205(d).

[S]ection 205(d), not § 205(c), specifies the recordation requirement prerequisite to the institution of an infringement action. Section 205(c)'s identification requirement merely pertains to whether a particular document recorded in the copyright office may be deemed to provide all persons with constructive notice of the facts in the document.

*Swarovski America Ltd. v. Silver Deer Ltd.*, 537 F.Supp. 1201, 1205 n. 3 (D.Col. 1982). Furthermore, although it is clear that recordation of an exclusive copyright transfer is a jurisdictional prerequisite to maintenance of a copyright infringement action, *Nation's Choice Vitamin Co., Inc. v. General Mills, Inc.*, 526 F.Supp. 1014,

1017 (S.D.N.Y.1981) (Duffy, J.), courts have consistently permitted a plaintiff to correct a defective recordation, and to go forward with the suit as of the date of the filing of the action.[7] *See Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.*, 524 F.Supp. 615, 619 (E.D.N.Y.1981); *Co-opportunities v. National Broadcasting Co., supra*, 510 F.Supp. at 48–49; *Frankel v. Stein & Day, Inc.*, 470 F.Supp. 209 (S.D.N.Y.1979) (Lasker, J.), *aff'd*, 646 F.2d 560 (2d Cir.1980). Therefore, even were the Court to find the recordation of the memorandum defective, other factors, prejudice to defendants, for example, would have to be demonstrated before dismissal on this ground would be warranted. *Cf. Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp., supra*, 524 F.Supp. at 620. Such factors have not been shown.

Defendants' alternative motion, to delay the case to permit pre-answer discovery, is also denied. Plaintiff has explained the significance of each of the documents at issue; other questions concerning the dates of the documents can await explanation. Defendants are obviously not precluded from later challenging Northern's standing to bring suit if they can add substance to the allusions of impropriety which they made based upon technical irregularities in the documents.

Defendants' motion to dismiss, and its alternative request are denied.

IT IS SO ORDERED.

---

Office gives all persons constructive notice of the facts stated in the recorded document, but only if—

(1) the document, or material attached to it, specifically identifies the work to which it pertains so that, after the document is indexed by the Register of Copyrights, it would be revealed by a reasonable search under the title or registration number of the work; and

(2) registration has been made for the work.

(d) *Recordation as Prerequisite to Infringement Suit*—No person claiming by virtue of a transfer to be the owner of copyright or of

any exclusive right under a copyright is entitled to institute an infringement action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before recordation.

7. For the sake of clarity here, however, plaintiff should refile the memorandum in the Copyright Office with appropriate corrections made; to reflect the new recordation, leave to serve a supplemental pleading is granted.